MAURICE RICHELSON,  :   CIVIL ACTION
                    :   NO. 10-1342
        Plaintiff,  :
                    :
     v.             :
                    :
R. DAVID YOST, et al.,  :
                    :
        Defendants.  :

FILED

SEP 10 2010

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    SEPTEMBER 9, 2010

## I.    INTRODUCTION

Amidst allegations of corporate misconduct and
associated qui tam litigation, Plaintiff Maurice Richelson
("Plaintiff") filed this derivative suit on behalf of nominal-
defendant AmerisourceBergen Corporation ("AmerisourceBergen").
Plaintiff names as defendants several current and former
directors and officers of AmerisourceBergen ("Defendants"), who
move to dismiss the complaint under Rules 12(b)(6) and 23.1 of
the Federal Rules of Civil Procedure.  Defendants also seek
monetary sanctions under Rule 11 in the form of an award of
attorneys' fees.  For the reasons set forth below, Defendants'
motion to dismiss will be granted without prejudice and

Defendants' motion for sanctions will be denied.[1]

## II. BACKGROUND

A. <u>Plaintiff's Allegations of Corporate Misconduct</u>

Plaintiff alleges that Defendants breached their fiduciary duties by knowingly engaging or allowing AmerisourceBergen to engage in illegal conduct. More specifically, Plaintiff's derivative suit relates to damages AmerisourceBergen has allegedly sustained in the course of defending itself in a <u>qui tam</u> suit filed in the U.S. District Court for the District of Massachusetts. The complaint in that case ("<u>Qui Tam</u> Complaint") was filed on October 30, 2009, and averred violations of the False Claims Act, Medicaid Anti-Kickback Statute, unjust enrichment and fraud. (Compl. ¶ 3.) The U.S. government and several states ultimately intervened in the suit, which was dismissed without prejudice on April 26, 2010. <u>See</u> <u>United States ex rel. Westmoreland v. Amgen</u>, --- F. Supp. 2d ----, No. 06-10972, 2010 WL 1634315, at *14 (D. Mass. Apr. 23, 2010). Currently, an amended complaint has been filed

---

[1]    Plaintiff is a citizen of Tennessee. (<u>See</u> Compl.) All of the seventeen individually named defendants, as well as nominal-defendant AmerisourceBergen which is a Delaware corporation with its principal place of business in Pennsylvania, are citizens of states other than Tennessee. (<u>See</u> <u>id.</u> ¶¶ 10-29.) Thus, the Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a)(2) as the parties are citizens of different states and the amount in controversy exceeds $75,000. (<u>See</u> <u>id.</u> ¶ 6.)

and several of the intervening states have filed a Notice of Appeal.

According to Plaintiff, the qui tam suit arose because AmerisourceBergen, through its subsidiaries,[2] (1) entered into an agreement with Amgen, Inc. ("Amgen")[3] whereby medical providers were offered "kickbacks" to increase drug sales; and (2) encouraged physicians to bill Medicaid and third-party payers for drugs provided to the physicians for free. (Compl. ¶ 4.) This was allegedly accomplished via two contracts entered into by INN and Amgen in 2003 providing INN was to plan "advisory board" meetings for physicians. (Id. ¶ 45.) Under the contracts, the physicians who participated in these meetings would be "reimbursed for travel expenses" and be "paid an honorarium . . . just to attend." (Id. ¶ 42.) The Qui Tam Complaint alleges these agreements were a "conduit" to "'provide kickbacks, including sham consultancy fee payments and all expense paid 'weekend retreats,' to Aranesp nephrology-specialty customers.'"

---

[2] The subsidiary defendants named in the Qui Tam Complaint were AmerisourceBergen Specialty Group, the International Nephrology Network ("INN") and ASD Healthcare ("ASD"). (Compl. ¶ 3.) Some of the allegedly illegal conduct, which Plaintiff claims began in 2003, was undertaken before the subsidiaries were affiliated with AmerisourceBergen. (See id. ¶ 39 (explaining that ASD and INN became part of AmerisourceBergan in 2004).)

[3] Amgen was also a named defendant in the Qui Tam Complaint. (Id. ¶ 3.) Amgen is a drug manufacturer that produces Aranesp—an anemia drug used in the course of dialysis for patients with end stage renal disease. (Id. ¶ 4.)

(Id. ¶ 45.) And, at these meetings, physicians were induced to purchase Aranesp by advocating and encouraging the physicians to bill for "extra product in excess of the labeled fill volume dosage" known as "overfill" that the physicians received for free. (Id. ¶ 40.)

Plaintiff's complaint additionally alleges that INN and Amgen entered into a Group Purchasing Organization Agreement on September 15, 2003 that was followed by a second agreement in 2006 whereby Amgen would pay INN a "volume-based performance administrative fee of up to two percent, plus an . . . administrative fee of up to one percent." (Id. ¶ 43.) The Qui Tam Complaint alleges these fees fail to comply with the safe-harbor provisions of the federal Anti-Kickback Statute for group purchasers. (Id. ¶ 47.)

B.  Plaintiff's Demand on the Board of Directors

On December 17, 2009, Plaintiff's attorney sent a letter to Richard C. Gozon, Chairman of AmerisourceBergen's Board, describing the allegations set forth in the Qui Tam Complaint. (See id. ¶ 55 (describing the December 17, 2009 letter as a demand on the Board of Directors).) Plaintiff's letter stated:

> This firm represents Maurice Richelson, (the "Stockholder") a holder of shares of common stock of AmerisourceBergen Corporation ("AmerisourceBergen" or the "Company"). I write on behalf of the Stockholder to demand that the Board of Directors of AmerisourceBergen (the "Board") take action to remedy breaches of fiduciary duties by the directors and

certain executive officers of the Company . . . .

(Id., Ex. A.)  Naming the individual defendants in Plaintiff's complaint as the responsible parties, the letter went on to describe the factual allegations relating to Plaintiff's demand:

> The Stockholder contends that AmerisourceBergen and its subsidiaries AmerisourceBergen Specialty Group, International Nephrology Network d/b/a Integrated Nephrology Network ("INN") and ASD Healthcare, with the knowledge and approval of the Directors and Officers, engaged in illicit practices and activities in collusion with Amgen, Inc. ("Amgen") that caused the United States Government, several state governments and the District of Columbia to bring an action to recover losses from false claims and fraudulent certifications submitted to Medicare/Medicaid programs.

> As you know, on or about October 30, 2009, a lawsuit was filed in Massachusetts federal court by the United States of America, the states of California, Delaware, Florida, Hawaii, Illinois, Indiana, Louisiana, Michigan, Nevada, New Hampshire, New York, and Tennessee, the commonwealths of Massachusetts and Virginia, and the District of Columbia . . . against AmerisourceBergen, INN, AmerisourceBergen Specialty Group, ASD Healthcare and Amgen. The lawsuit alleges that these defendants were involved in a scheme to offer kickbacks to medical providers in order to increase sales of Aranesp, an anemia drug made by Amgen.

> The . . . complaint alleges that since as far back as 2003, AmerisourceBergen and the other defendants encouraged physicians to bill Medicaid and other third party payers for what amounted to free dosages of Aranesp that had been provided at no cost to the physicians. Moreover, the complaint alleges that INN and ASD Healthcare conspired with Amgen to offer illegal kickbacks to physicians, including, but not limited to, consultancy agreements and weekend trips, in order to persuade the physicians to purchase Aranesp. The complaint further alleges that the defendants then caused physicians to submit false certifications of compliance to Medicaid and Medicare programs falsely stating that they were in compliance with state and federal anti-kickback statutes. . . .

> The Stockholder maintains that each of the Directors and Officers breached their fiduciary duties by knowingly

> causing or allowing AmerisourceBergen, INN,
> AmerisourceBergen Specialty Group, and ASD Healthcare to
> engage in the foregoing misconduct.

(Id.)  The letter went on to affirmatively demand that the board

of directors take action against the culpable parties to recover

damages for the corporation:

> I hereby demand that the Board take action against each of
> the Directors and Officers to recover the damages described
> herein for the benefit of the Company and to correct the
> deficiencies in the Company's internal controls that allowed
> the misconduct to occur.
>
> If within a reasonable period after receipt of this
> letter, the Board has not commenced an action as demanded
> herein, or in the event that the Board refuses to commence
> an action as demanded herein, the Stockholder will commence
> a shareholder derivative action on behalf of
> AmerisourceBergen seeking appropriate relief.

(Id.)

Upon receiving Plaintiff's letter, AmerisourceBergen

checked the corporation's books and records to ensure Plaintiff

had standing to make the demand.  It was unable to confirm

Plaintiff was, in fact, a shareholder of the corporation.

(8/23/2010 Hrg. Tr. 10:12-24.)  Thus, on December 28, 2009,

AmerisourceBergen responded to acknowledge receipt of Plaintiff's

December 17 letter and request additional information:

> This will acknowledge receipt of your letter dated December
> 17, 2009 . . . .
>
> Your letter purports to be sent on behalf of a
> shareholder of AmerisourceBergen with standing to request
> action by AmerisourceBergen's Board of Directors.  Before
> your letter is referred to the Board of Directors for
> consideration, we ask that you confirm Maurice Richelson's
> status as a shareholder of AmerisourceBergen given that Mr.

- 6 -

Richelson is not listed as a current record owner of any shares of AmerisourceBergen common stock ("ABC Stock"). Please provide us with evidence of Mr. Richelson's status as a shareholder, including the account or nominee through which he holds shares and the number of shares of ABC Stock he holds. Please also advise us of the date Mr. Richelson first became an owner of the ABC Stock, whether he has been an owner continuously since that time and whether there have been any changes in his level of ownership during that time. Finally, please provide us with any other information that you believe may be pertinent to our ability to determine whether or not Mr. Richelson is entitled to request action by AmerisourceBergen's Board of Directors.

The next regularly scheduled meeting of AmerisourceBergen's Board of Director [sic] will be held on March 4, 2010. We would appreciate your response well in advance of that date so that the Board of Directors has appropriate time to put Mr. Richelson's demand on the meeting agenda for consideration of next steps, if such consideration is warranted.

(Def's Mot. to Dismiss, Ex. A.)[4]

Plaintiff did not respond to AmerisourceBergen's December 28 letter requesting additional information. Instead, Plaintiff brought this derivative suit alleging he was a "shareholder of AmerisourceBergen at the time of the wrongdoing . . . and . . . continuously since that time," (Compl. ¶ 53), who is therefore entitled to sue derivatively because the Board did not properly act on Plaintiff's demand. (See id. ¶ 55 ("The

---

[4] The Court considers this document without converting Defendants' motion to a motion for summary judgment because it is authentic and integral to Plaintiff's complaint. See In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996))).

Board has acknowledged receipt of the Demand but otherwise has not responded to the Demand nor indicated when a response might be forthcoming.").)


## III. DEFENDANTS' MOTION TO DISMISS

Defendants seek to dismiss Plaintiff's suit on two grounds.[5] First, Defendants argue Plaintiff does not have standing to sue derivatively. Second, Defendants argue Plaintiff's underlying allegations of a breach of fiduciary duty against the individual defendants fails to state a cognizable claim upon which relief can be granted. Because the Court will dismiss for lack of standing, the Court does not address the second basis for dismissing the action.

### A.  Standard of Review

In derivative suits in which a defendant seeks to dismiss for lack of standing, the standard of review is drawn from three sources:  (1) Rule 12(b)(6), which is the procedural avenue by which the Court may dismiss a complaint; (2) Rule 23.1, which sets forth the applicable pleading standards; and (3) state law, which supplies the substantive requirements for a complaint to meet the particularized standard of Rule 23.1.  In sum,

---

[5]    Defendants also moved to dismiss the suit for lack of personal jurisdiction due to insufficient process and service under Rules 12(b)(4) and 12(b)(5) respectively.  However, Defendants conceded at oral argument that any alleged deficiency in the summons or service has since been cured by re-service.

coupled with Rule 12(b)(6), the combination of Rule 23.1 and state law furnish a basis for dismissing a plaintiff's derivative suit.[6] See, e.g., Fagin v. Gilmartin, 432 F.3d 276, 281 (3d Cir. 2005) (evaluating motion to dismiss for improper standing to bring a derivative suit under Rules 12(b)(6) and 23.1); see also Shlensky v. Dorsey, 574 F.2d 131, 142 (3d Cir. 1978) (dismissing complaint under Rule 23.1 due to inadequate demand on the board).

      1.    Applicable Requirements Under Rule 12(b)(6)

In evaluating Defendants' motion, the Court "accept[s] as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted). Additionally, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and

---

    [6]     Some cases view the interaction of Rules 23.1 and 12(b)(6) in a slightly different manner. See, e.g., In re Forest Labs., Inc. Derivative Litig., 450 F. Supp. 2d 379, 387 (S.D.N.Y. 2006) ("Because Rule 23.1 requires particularized allegations, the pleading standard is higher than the standard applicable to a pleading subject to a motion to dismiss pursuant to Rule 12(b)(6)."). In interpreting Chancery Rule 23.1, which is substantially similar to Fed. R. Civ. P. 23.1, Delaware courts also view the interaction of the rules differently. See, e.g., In re Citigroup, Inc. S'holder Derivative Litig., 964 A.2d 106, 139 (Del. Ch. 2009) (distinguishing between the standards for dismissal under Chancery Rule 23.1 and Delaware's Rule 12(b)(6)).

conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Id. at 555 (internal citation
omitted). Although a plaintiff is entitled to all reasonable
inferences from the facts alleged, a plaintiff's legal
conclusions are not entitled to deference and the court is "not
bound to accept as true a legal conclusion couched as a factual
allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited
with approval in Twombly, 550 U.S. at 555).

    2.  Applicable Requirements Under Rule 23.1

     Rule 23.1 provides that a complaint in a derivative
action must be verified and:

> (1) allege that the plaintiff was a shareholder or member at
> the time of the transaction complained of, or that the
> plaintiff's share or membership later devolved on it by
> operation of law;
>
> (2) allege that the action is not a collusive one to confer
> jurisdiction that the court would otherwise lack; and
>
> (3) state with particularity:
>
> > (A) any effort by the plaintiff to obtain the desired
> > action from the directors or comparable authority and,
> > if necessary, from the shareholders or members; and
> >
> > (B) the reasons for not obtaining the action or not
> > making the effort.

Fed. R. Civ. P. 23.1(b). However, while Rule 23.1 sets forth the
procedural requirements for pleading in a derivative suit, the
substantive requirements of a demand are determined in accordance
with applicable state law. See Kamen v. Kemper Fin. Servs., 500
U.S. 90, 97 (1991) ("[I]n order to determine whether the demand

requirement may be excused by futility in a derivative action . . . we must identify the source and content of the substantive law that defines the demand requirement in such a suit."); see also Blasband v. Rales, 971 F.2d 1034, 1047 (3d Cir. 1992) ("The substantive requirements of demand are a matter of state law."). Accordingly, Delaware law governs the substantive demand requirements in this case because AmerisourceBergen is incorporated in Delaware.[7]

3.   Applicable Requirements Under Substantive State Law

Under Delaware law, a shareholder seeking to maintain a derivative action must "first make demand on that corporation's board of directors, giving the board the opportunity to examine the alleged grievance and related facts and to determine whether pursuing the action is in the best interests of the corporation." Ryan v. Gifford, 918 A.2d 341, 352 (Del. Ch. 2007).  This requirement relates to the "cardinal precept" of Delaware law

_____

[7]     Applying Pennsylvania choice of law rules, see Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 179 n.10 (3d Cir. 2005) ("Because the District Court sits in Pennsylvania, it applies that state's conflict of law principles . . . . (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941))), Delaware law governs the substantive demand requirements under the "internal affairs doctrine," see Banjo Buddies, 399 F.3d at 179 n.10 (noting District Court properly applied Wisconsin law to determine internal affairs of Wisconsin corporation because Pennsylvania has "adopted the 'internal affairs doctrine' by statute"); Fagin, 432 F.3d at 282 (determining demand requirements by reference to incorporation law under the "internal affairs" doctrine).  The parties do not dispute the applicable law in this case.

that the "directors, rather than the shareholders, manage the business and affairs of the corporation" insofar as a derivative suit is an encroachment on this authority. <u>Aronson v. Lewis</u>, 473 A.2d 805, 811 (Del. 1984), <u>overruled on other grounds</u>, <u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000).

Nevertheless, the requirement of demand is excused "if a plaintiff can raise a reason to doubt that: (1) a majority of the board is disinterested or independent or (2) the challenged acts were the product of the board's valid exercise of business judgment." <u>Id.</u> This latter basis for satisfying Delaware's demand requirement—so-called "demand futility"—is limited in two ways. First, it is a very onerous standard for a plaintiff to meet. <u>See</u> <u>id.</u> at 352 n.23 (describing the difficulty of establishing demand futility). Second, a shareholder who makes a demand on the board of directors waives the right to satisfy Delaware's demand requirement in this manner because, by doing so, "a stockholder tacitly acknowledges the absence of facts to support a finding of futility." <u>Spiegel v. Buntrock</u>, 571 A.2d 767, 775 (Del. 1990); <u>see</u> <u>Scattered Corp. v. Chi. Stock Exch.</u>, 701 A.2d 70, 74 (Del. 1997) ("If the stockholders make a demand . . . they are deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand."), <u>overruled on other grounds</u>, <u>Brehm</u>, 746 A.2d 244; <u>Rales v. Blasband</u>, 634 A.2d 927, 935 n.12 (Del. 1993) ("Where a demand

has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond."); Spiegel, 571 A.2d at 775 ("A shareholder who makes a demand can no longer argue that demand is excused . . . .").

Accordingly, once a shareholder makes a demand to initiate litigation, "[t]he effect . . . is to place control of the derivative litigation in the hands of the board of directors." Spiegel, 571 A.2d at 775. The board's power in this regard is not unbounded, however, because a stockholder's demand does not "waive the right to claim that demand has been wrongfully refused." Grimes v. Donald, 673 A.2d 1207, 1219 (Del. 1996), overruled on other grounds, Brehm, 746 A.2d 244.

But the shareholder bears the weighty burden of rebutting the business judgment rule in such circumstances. As the Delaware Supreme Court has explained:

> The function of the business judgment rule is of paramount significance in the context of a derivative action. It comes into play in several ways—in addressing a demand, in the determination of demand futility, in efforts by independent disinterested directors to dismiss the action as inimical to the corporation's best interests, and generally as a defense to the merits of the suit.

Spiegel, 571 A.2d at 777 (internal quotations and citation omitted). Thus, the board's actions following a shareholder's demand will be upheld as long as they are (1) reasonable; and (2) made in good faith. See id. ("[W]hen a board refuses demand, the

- 13 -

only issues to be examined are the good faith and reasonableness of its investigation."); see also Levine v. Smith, 591 A.2d 194, 213 (Del. 1991) (applying the "traditional business judgment rule" and therefore solely evaluating whether the board of directors' response to a shareholder's demand was made on an "informed basis" and in "good faith"), overruled on other grounds, Brehm, 746 A.2d 244.

    B.   Discussion

        Pointing to the fact that Plaintiff's pleading acknowledges making a demand on the board, Defendants correctly note that the business judgment rule governs the board's action. (See Defs.' Mot. To Dismiss, at 13-14.) Plaintiff does not dispute this point, but characterizes the board's response as inadequate under the business judgment rule since the board never decided whether to act on Plaintiff's demand. Thus, the dispute hinges on whether Defendants' response to Plaintiff's demand requesting Plaintiff to confirm his status as a shareholder was a "refusal" of demand or a failure to respond to Plaintiff's demand and, correspondingly, whether Plaintiff's demand was legally sufficient under Delaware law.

        Defendants argue Plaintiff's demand was not, itself, sufficient and that their response served to defer action on the demand until Plaintiff responded. On the other hand, according to Plaintiff, the board was not legally entitled to proof of

Plaintiff's shareholder status as a condition precedent to evaluating whether to pursue the litigation requested by Plaintiff. Accordingly, Plaintiff asserts the board, by not investigating the charges contained in Plaintiff's demand letter, failed to discharge its obligation to decide whether or not to act on Plaintiff's demand. (See Pl.'s. Mot. In Opp'n To Defs.' Mot. To Dismiss, at 7-9.)

There is scant legal authority addressing whether a board of directors is legally obliged to act on a demand from an alleged shareholder whose status as a shareholder cannot be confirmed by the corporation. However, the mechanics of the derivative suit and applicable precedent confirm that Defendants had no such obligation.

First, both the pleading requirements in Rule 23.1 and substantive Delaware law require, as a preliminary matter, that the party seeking to sue derivatively actually be a shareholder at the time the transaction in question took place. This is the purpose of the requirement that a shareholder suing derivatively plead facts to that effect with particularity. See Fed. R. Civ. P. 23.1 (requiring verification of pleading that "plaintiff was a shareholder or member at the time of the transaction complained of"); see also Ryan, 918 A.2d at 352 n.23 (noting that Chancery Rule 23.1, which is materially similar to Fed. R. Civ. P. 23.1, requires the complaint to "'allege with particularity the

efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors'"); Del. Code Ann. tit. 8 § 327 (2010) (requiring it to be "averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law").

Second, under Delaware law, the party seeking to sue derivatively must also be a shareholder throughout the duration of the litigation. See Parfi Holding AB v. Mirror Image Internet, Inc., 954 A.2d 911, 935 (Del. Ch. 2008) (to have standing to bring a derivative suit, shareholders must "maintain their shareholder status throughout the litigation"). These requirements not only impact who may bring a derivative suit—they also affirmatively limit the class of plaintiffs who may properly make demand on the board. See Potter v. Hughes, 546 F.3d 1051, 1057 (9th Cir. 2008) (applying California law, which follows Delaware law, and noting plaintiff was "not qualified to make a demand due to his lack of contemporaneous ownership").

It is true, as Plaintiff notes, that these pleading and substantive requirements do not explicitly impose an obligation on the shareholder making demand to affirmatively prove that he or she is a shareholder in the demand letter. However, these requirements do demonstrate that the board of directors need not

act upon a purported shareholder's demand letter if, after reasonable investigation undertaken in good faith, the shareholder's status as a shareholder cannot be confirmed. A corporation's directors, after all, should not be expected or forced to investigate allegations from one who is neither (1) entitled to make the demand; nor (2) file a derivative suit. Cf. In re Schmitz, 285 S.W.3d 451, 455 (Tex. 2009) (interpreting Texas law and holding that, although the relevant statute "does not expressly state that a presuit demand must list the name of a shareholder" the statute's "purposes would be defeated otherwise" and therefore "a demand cannot be made anonymously"); see also Model Bus. Corp. Act § 7.42 cmt. (2005) (stating that a shareholder's demand letter should "set forth the facts concerning share ownership").

For precisely this reason, courts have dismissed derivative actions predicated on demand where the demand was deemed legally inadequate based on its inability to inform the board as to the essential facts. See, e.g., Levner v. Saud, 903 F. Supp. 452, 456 (S.D.N.Y. 1994) (stating that, under Delaware law, a demand must "at a minimum . . . identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief" and that the demand at issue failed to meet this standard (internal marks omitted) (quoting Allison v. General Motors

Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985))), aff'd sub nom. Levner v. Prince Alwaleed, 61 F.3d 8 (2d Cir. 1995).

Smachlo v. Birkelo is illustrative of this point. In Smachlo, the board of directors received a purported demand letter from plaintiff's counsel that failed to identify the plaintiff-shareholder by name. 576 F. Supp. 1439, 1444 (D. Del. 1983). Instead, the letter in Smachlo only stated that plaintiff's counsel "represent[s] the owners of approximately 2,000 shares of . . . stock." Id. (internal marks omitted). In turn, the corporation replied to plaintiff's counsel, advising that the corporation would "not consider utilizing its corporate machinery in the ways requested . . . without documentation that its shareholders are requesting such actions." Id. As in the present case, the Smachlo plaintiff failed to respond to the corporation's letter and instead filed a derivative suit. Id. In dismissing the suit for lack of standing, the court found the failure to identify the shareholder significant:

> [T]he letter fails to sufficiently identify Mr. Nathan's client. A company's board of directors should not be required to act upon the demand of an alleged shareholder when that shareholder fails to properly identify himself. If this Court were to hold otherwise, then unscrupulous plaintiffs could circumvent the demand requirement by framing their demands in vague, ambiguous terms. The plaintiff must exercise good faith in making his demand. A demand, such as the one in the present case, fails to satisfy this requirement. The board is required to act reasonably in considering a shareholder's demand. However, the board is not charged with being clairvoyant; it cannot be expected to act where the shareholder does not specify who he is.

Id. (internal citations omitted). Further, the court stated that the plaintiff had a "duty" to respond to the corporation's request for more information and that, by filing a derivative suit instead, "plaintiff . . . hindered the demand requirement's important purpose 'of allowing corporations to govern themselves to the extent possible, avoiding unnecessary judicial involvement in the internal affairs of business organizations, and discouraging harassing strike suits.'" Id. (quoting 7A Wright & Miller, Federal Practice and Procedure: Civil § 1831, at 382 (1972)).

Plaintiff attempts to distinguish Smachlo by noting that, in this case and unlike Smachlo, Plaintiff was specifically identified by name in the demand letter. However, the concerns the Smachlo court expressed in dismissing the action in that case apply with equal force here. The status of the party in the demand letter—not merely the party's name—is what is significant because, as noted, a non-shareholder has no right to make demand on the board or initiate a derivative suit. See Allison, 604 F. Supp. at 1117 ("Adequacy of demand is tied to its purpose. . . . [that] directors are answerable to the shareholders and are charged with the duty and responsibility to manage all aspects of corporate affairs." (emphasis added)). Thus, although the demand letter in this case identified the plaintiff by name and stated that he was a shareholder, it was reasonable for the corporation

to request that Plaintiff confirm he was a shareholder before proceeding further after AmerisourceBergen could not confirm the same after checking the corporation's books and records.[8] See Smachlo, 576 F. Supp. at 1444 (explaining the board is "not charged with being clairvoyant").

And where, as here, the corporation cannot ascertain through the exercise of due diligence whether the demand letter is coming from a shareholder,[9] the board would have been equally justified to discard Plaintiff's letter entirely. Of course, the corporation is free to, as it did here, request additional information which would verify a shareholder's status as a shareholder before proceeding on a demand. Equally, the shareholder is free to either provide the information as requested or, instead, stand on the demand letter and take his or her chances that the court will find the demand letter to be adequate. Under either scenario, whether the shareholder provides additional information as requested by the corporation or chooses to commence litigation, the ultimate legal issue is

---

[8]     For this reason, the board's actions are also protected by the business judgment rule. Plaintiff has pleaded no facts indicating the board's decision to request additional information before acting on the demand was unreasonably informed or made in bad faith. See Spiegel, 571 A.2d at 777.

[9]     In this case, AmerisourceBergen exercised the necessary due diligence in ascertaining that the name of the person making the demand was not listed as a shareholder in the corporation's books and records.

the same: is the demand letter sent to the board legally adequate? Here, it was not. Because Plaintiff's demand letter failed to apprise the board of the necessary facts attendant to any obligation to investigate whether to bring suit, Defendants' motion to dismiss for lack of standing will be granted without prejudice.[10]

---

[10]   At oral argument, Plaintiff principally focused on the board's request for more information rather than the legal sufficiency of the demand itself. In particular, Plaintiff argued that enabling the board to respond to a demand letter with requests for additional information could lead to a slippery slope whereby boards will postpone investigating shareholder demands by exchanging in an endless back-and-forth. The Court is not unsympathetic to Plaintiff's fear.

However, this concern is misplaced because a plaintiff seeking to sue derivatively need not respond to each and every inquiry or any inquiry at all provided a valid demand is made on the board. To the extent this latter inquiry hinges on whether the board can confirm a demand is made by an actual shareholder, it behooves plaintiffs to be as comprehensive as possible in establishing the validity of their demand—be it in the initial demand letter, or by responding to a board of director's good-faith request for additional information. Indeed, in explaining the mechanics of the demand requirement, some authority expressly contemplates a dialogue between the corporation and the shareholder following a shareholder's demand on the board. For example, in describing why the specificity of a demand letter should "not become a new source of dilatory motions," the Model Business Corporation Act explains that a demand should "set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the action sought to be taken and the grounds for that action so demand can be evaluated" but that "[d]etailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions." Model Bus. Corp. Act § 7.42 cmt. (2005).

## IV. DEFENDANTS' MOTION FOR SANCTIONS

Asserting the same arguments concerning the Plaintiff's standing to assert a derivative claim, Defendants seek monetary sanctions in the form of an award of attorneys' fees to Defendants. Plaintiff seeks reasonable expenses incurred in opposing the motion.

### A. Legal Standard

Under Rule 11, a party's filing represents to the court that the "claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "[T]he court may impose an appropriate sanction on any attorney, law firm, or party" that fails to comply with this rule. Fed. R. Civ. P. 11(c)(1). In determining whether sanctions are appropriate, the court applies an objective standard of reasonableness. See Bensalem Twp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1994) (explaining that Rule 11 "imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing" and that this standard is met if there is an "objective knowledge or belief at the time of the filing . . . that the claim was well-grounded in law and fact." (internal marks omitted) (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991))). A motion

for sanctions should therefore not be granted if there "are grey areas" as to avoid penalizing a "confused but cautious litigant." Id.; see also id. (holding district court abused discretion by awarding sanctions where party filed a Rule 59(e) motion while a petition for rehearing was pending with the court of appeals because "the ripeness of an appeal [was] not clear" and "a party should not be sanctioned . . . for taking reasonable steps to perfect the appeal or clarify its status"). Rule 11 also provides that the "court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion" for sanctions "[i]f warranted." Fed. R. Civ. P. 11(c)(2).

    B.   <u>Discussion</u>

        Defendants argue sanctions are appropriate because (1) Plaintiff's suit was frivolous in light of the corporation's letter to Plaintiff requesting additional information; and (2) Plaintiff's reference to the corporation's letter in the complaint as an "acknowledgment" was disingenuous—particularly since the corporation's letter to Plaintiff was not affixed to the complaint as an exhibit alongside Plaintiff's demand letter.

        Although the Court holds Plaintiff's demand letter did not satisfy the demand requirement for bringing a derivative action, Plaintiff's filing cannot be said to be objectively unreasonable in view of the sparse legal authority addressing

whether a board of directors is legally obliged to act on a demand from an alleged shareholder whose status as a shareholder cannot be confirmed. <u>See</u> <u>Bensalem Twp.</u>, 38 F.3d at 1314 (holding sanctions inappropriate because the law was unclear as to the merits of the filing). Therefore, the Court will deny Defendants' motion for sanctions.

It will similarly deny to grant Plaintiff attorneys' fees in defending against Defendants' motion for sanctions because Plaintiff (1) did not file a motion requesting as much; (2) has furnished no reasons for the Court to do so other than arguing that Plaintiff's position was not sanctionable; and (3) Defendants' request for sanctions was not objectively unreasonable. <u>Cf.</u> <u>Zion v. Nassan</u>, --- F. Supp. 2d ----, 2010 WL 2926218, at *24 (W.D. Pa. July 23, 2010) (rejecting assertion of "entitlement to an award of counsel fees . . . incurred in responding to . . . 'frivolous Rule 11 motion'" where plaintiffs did not file a motion or fully brief the issue, and the Rule 11 motion plaintiffs responded to raised "sufficient matters of concern" even though sanctions were not ultimately awarded).

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to

dismiss will be granted without prejudice,[11] and Defendants'
motion for sanctions will be denied.  An appropriate Order will
follow.

---

[11]    Plaintiff's failure to make an adequate demand may be
cured.  See In re Sonus Networks, Inc. S'holder Derivative
Litig., 499 F.3d 47, 61 (1st Cir. 2007) ("While dismissal of a
derivative suit for failure to plead demand . . . is of course a
type of dismissal for inadequate pleadings, it is also a
dismissal for failure to accomplish a precondition, which is a
failure that may be remedied by the time the second suit is
filed.").  Of course, having attempted to make a valid demand and
pleading facts to that effect, Plaintiff may not sue derivatively
on the basis of demand futility.  See Spiegel, 571 A.2d at 775
("A shareholder who makes a demand can no longer argue that
demand is excused . . . .").